**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BART ZAMICHIEI AND<br>TAMMY ZAMICHIEI | : | CIVIL ACTION NO.<br>3:16-CV-00739 (VAB) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CSAA FIRE & CASUALTY INSURANCE:<br>COMPANY | : | |
| | : | |
| Defendant. | : | JULY 24, 2017 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

The Defendant, CSAA Fire & Casualty Insurance Company ("CSAA"), respectfully submits this memorandum of law in support of its Motion for Summary Judgment as to the Plaintiffs' Amended Complaint dated February 21, 2017.  By way of their Amended Complaint, the Plaintiffs seek insurance proceeds under their homeowners' insurance policy with CSAA due to the cracking of their concrete foundation.  For the reasons discussed below, CSAA is entitled to judgment in its favor as a matter of law.

First, the Plaintiffs failed to commence this suit against CSAA within two years of the date of loss.  Accordingly, the Plaintiffs' suit is barred by the policy's two-year suit limitation provision.

Second, coverage is barred because the alleged loss occurred outside of the policy period. Indeed, many years before the Plaintiffs secured homeowners insurance

with CSAA, they were aware of the cracking of their foundation.  Consequently, because the loss occurred prior to inception of the CSAA policy, there is no coverage.

Third, the Plaintiffs' policy does not cover the loss at issue because the loss does not constitute a "Collapse" as defined by the policy. Specifically, because the Premises is still standing, has not sustained an abrupt falling down or caving in and is still being used for its intended purpose, the Premises has not "collapsed" as contractually defined. Therefore, coverage for the loss based upon the policy's Additional Coverage for Collapse is barred.

Fourth, coverage for the alleged loss is barred as a matter of law because the policy provides coverage for accidental, fortuitous losses only. Here, there is no genuine issue of material fact that the Plaintiffs' loss was not an accidental, fortuitous loss. Consequently, there is no coverage.

Fifth, coverage for the alleged loss is barred based upon several unambiguous exclusions in the subject policy.  Specifically, the policy excludes coverage for damage that results from wear, tear, marring, deterioration, inherent vice, latent defect and/or mechanical breakdown.  Because the Plaintiffs' alleged loss or damage is the result of wear and tear, marring, deterioration, inherent vice and/or latent defect, there is no coverage.  The loss is further excluded as it is the result of defective materials and/or workmanship in construction and because the loss consists of and/or was caused by cracking.

Based upon the foregoing, judgment as a matter of law should enter in favor of CSAA.

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## II.     UNDISPUTED FACTS

### A.     Testimony of Plaintiff Tammy Zamichiei

Plaintiff Tammy Zamichiei testified at deposition as follows:[1]

- They built the Premises in 1989 and moved in in January 1990. See Local Rule 56(a)1 Statement at 11;
- Mottes Concrete poured the foundation at the Premises. Id. at 13;
- The Premises is still standing and there were no singular, sudden or abrupt events which caused the cracking. Id. at 31;
- The intended purpose of the Premises is to have protection from the elements, and they are using it for its intended purpose. Id. at 32;
- The function of the basement walls is to hold up the Premises, and as of April 24, 2017 they were still performing that function. Id. at 33;
- The Premises has not fallen down, nor is it in imminent danger of falling down. Id. at 36;
- The Premises has not caved in, nor is it in imminent danger of caving in. Id. at 37;
- The Premises has not been condemned. Id. at 38;
- The Premises is fit for human occupancy. Id. at 39;
- She has not been told that the Premises is unsafe or uninhabitable. Id. at 40;
- She has not been told to move out of the Premises. Id. at 41;
- She has no plans to move from the Premises for safety reasons or concerns. Id. at 42;
- There is no pile of dirt or concrete in the basement of the Premises. Id. at 43.

### B.     Testimony of Plaintiff Bart Zamichiei

Plaintiff Bart Zamichiei testified at deposition as follows:[2]

- He and his wife have continuously lived in or occupied the Premises since it was completed. See Local Rule 56(a)1 Statement at 12;

---

[1]  A complete copy of Tammy Zamichiei's deposition transcript is attached to CSAA's Local Rule 56(a)1 Statement of Undisputed Facts as Exh. E.

[2]  A complete copy of Bart Zamichiei's deposition transcript is attached to CSAA's Local Rule 56(a)1 Statement of Undisputed Facts as Exh. F.

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

- About three or four years prior to April 24, 2017 he observed a horizontal crack in his basement adjacent to the hatchway door of the external stairs. Id. at 14;
- On December 28, 2015 he completed and submitted a Consumer Statement to the State of Connecticut Department of Consumer Protection, which form is also known as "Concrete 8/15" with a one page typewritten addendum. Id. at 15;
- He intended to make the second page captioned "ADDENDUM To Form Concrete 8.15" part of his submission to the State of Connecticut Department of Consumer Protection. Id. at 17;
- He submitted form Concrete 8/15 on his behalf, as well as on behalf of his wife Tammy Zamichiei. Id. at 18;
- He described his problem as "[f]oundation deterioration; horizontal and vertical spiderweb-like craking [sic] has occurred in the basement concrete foundation walls." Id. at 19;
- He stated the "problem began several years ago." Id. at 20;
- The Premises is still standing and there were no singular, sudden or abrupt events which caused the cracking. Id. at 31;
- The intended purpose of the Premises is to live in it, and they are using it for its intended purpose. Id. at 32;
- The Premises has not fallen down, nor is it in imminent danger of falling down. Id. at 36;
- The Premises has not caved in, nor is it in imminent danger of caving in. Id. at 37;
- The Premises has not been condemned. Id. at 38;
- The Premises is fit for human occupancy. Id. at 39;
- He has not been told that the Premises is unsafe or uninhabitable. Id. at 40;
- He has not been told to move out of the Premises. Id. at 41;
- He has no plans to move from the Premises for safety reasons or concerns. Id. at 42;
- There is no pile of dirt or concrete in the basement of the Premises. Id. at 43.

## C.    Testimony of William Neal

The Plaintiffs disclosed William Neal, a professional engineer, as their expert

witness. Mr. Neal testified at deposition as follows:[3]

---

[3]   A complete copy of William Neal's deposition transcript is attached to CSAA's Local Rule 56(a)1 Statement of Undisputed Facts as Exh. I.

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

- A concrete foundation has two jobs – to support the weight of the house, the building and its contents (a vertical load), and it also has to resist soil pressure from the exterior of the building (a lateral load).  See Local Rule 56(a)1 Statement at 34;
- There were no singular, sudden or abrupt events which caused the cracking he saw on the walls.  Id. at 31;
- At the time of his inspection, the Premises had not fallen down, nor was it in imminent danger of falling down, and he did not tell the Zamichieis it was in imminent danger of falling down.  Id. at 36;
- At the time of this inspection, the Premises had not caved in, nor was it in imminent danger of caving in, and he did not tell the Zamichieis it was in imminent danger of caving in.  Id. at 37;
- At the time of his inspection, the Premises had not fallen over or collapsed, and was still standing.  Id. at 31,43;
- The intended purpose of the Premises is a place for people to live, and on the date of his inspection, the Zamichieis were using it for its intended purpose.  Id. at 32;
- At the time of his inspection, the Premises was fit for human occupancy and had not been condemned by any governmental authority.  Id. at 39;
- At the time of his inspection, he did not tell the Zamichieis that the Premises was unsafe or uninhabitable, nor did he tell them to move out of the Premises.  Id. at 40-41;
- At the time of his inspection, there were no piles of rubble or dirt in the basement.  Id. at 43;
- At some point, the foundation at the Premises will fail, but he does not know when, nor can he quantify a timeline.  Id. at 44;
- At the time of his inspection, the foundation was performing its jobs of holding up both the lateral and horizontal loads.  Id. at 35_;
- Defective materials were used to make the concrete that now makes up the foundation in the Premises.  Id. at 21;
- The defective material is manifesting itself with the spiderweb cracking.  Id. at 22;
- The concrete at the Premises was doomed from the day it was poured.  Id. at 23;
- Impairment and breakdown of the subject concrete was inevitable based on the use of defective materials.  Id. at 24;
- The subject concrete was lying in wait.  Id. at 25;
- The most likely cause of the foundation distress is the chemical reaction due to defective materials being used in the manufacture of the concrete.  Id. at 26;
- The defect was inherent since the initial placement of the concrete.  Id. at 27;

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

- It is an ongoing condition which began years before his 2015 inspection. Id. at 28;
- At the time of his inspection, the subject foundation did not require immediate replacement.  Id. at 29;
- At the time of his inspection, the foundation was not structurally dangerous.  Id. at 30.

On October 16, 2015, the Plaintiffs made a formal claim to CSAA for damages caused by the chemical reaction.  See Local Rule 56(a)1 Statement  at ¶47.  The Plaintiffs seek coverage under the Policy's Additional Coverage – Collapse provision. Id. at ¶48.  They seek to recover for the progressive deterioration of the concrete caused by the chemical reaction.  Id. at ¶49.

After conducting an efficient investigation, CSAA denied coverage for the Plaintiffs' claim by way of correspondence dated November 5, 2015.  Id. at ¶50.

**D.     The Policy**

CSAA issued a policy of homeowners insurance to the Plaintiffs bearing policy number H03-0033857307 with effective dates of 1/23/15 – 1/23/16 (the "Policy").  Local R. 56(a)1 Statement at ¶5.  The Policy provides, in pertinent part, as follows:

SECTION I – PERILS INSURED AGAINST

A.     COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES

1.     We insure against risk of direct physical loss to property described in Coverages A and B.
2.     We do not insure, however, for loss:

A.     Under Coverages A, B and C:

   a.     Excluded under Section I – Exclusions;

* * *

   b.     Caused by:

- 6 -



  (6) Any of the following:

    (a) Wear and tear, marring, deterioration;

    (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

          \* \* \*

    (f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings.

Id. at ¶7.

    The Policy further provides as follows:

SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

  3. "Water" Damage

    "Water" Damage means:

    a. Flood or surface "water" from rain or snow, waves, tidal "water", overflow of a body of water, or spray from any of these, whether or not driven by wind;

    b. "Water" or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

    c. "Water" or water-borne material below the surface of the ground, including "water" which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure, caused by or resulting from human or animal forces or any act of nature.

- 7 -

225 Asylum Street
Hartford, CT 06103


HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

\* \* \*

B.  We do not insure for loss to property described in Coverages A and B caused by any of the following.  However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

 1.  Weather conditions.  However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.
 2.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.
 3.  Faulty, inadequate or defective:
  a.  Planning, zoning, development, surveying, siting;
  b.  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
  c.  Materials used in repair, construction, renovation or remodeling; or
  d.  Maintenance;

Id. at ¶8.

The Policy further provides:

E.  Additional Coverages

 8.  Collapse is deleted and replaced by the following:
 8.  Collapse

\* \* \*

 b.  With respect to this Additional Coverage:

  (1)  Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.
  (2)  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
  (3)  A part of a building that is standing is not considered to be in a state of collapse even if it

- 8 -



has separated from another part of the building.

    (4)    A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

c.    We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

    (1)    The Perils Insured Against;
    (2)    Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;
    (3)    Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;
    (4)    Weight of contents, equipment, animals or people;
    (5)    Weight of rain which collects on a roof; or
    (6)    Use of defective material or methods in construction, remodeling or renovation.

d.    Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under c.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

d.    This coverage does not increase the limit of liability that applies to the damaged covered property.

Id. at ¶9.

The Policy further provides:

SECTION I – CONDITIONS

* * *

- 9 -

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

G.     Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

\* \* \*

P.     Policy Period.

This policy applies only to loss which occurs during the policy period.

Id. at ¶10.

## III.   LEGAL STANDARD

### A.     Legal Standard for Summary Judgment

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED.R. CIV. P. 56(c).  The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party.  Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co., 424 F. Supp. 2d 388, 391 (D. Conn. 2006) (citation omitted).

Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and point to evidence in the record establishing a genuine issue of material fact.  Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  The nonmoving party may not rely on mere speculation or conjecture to overcome a motion for summary judgment.  Id. (citing Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  While the nonmoving party's admissible evidence must be accepted as true, and the nonmoving party must be given



225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the benefit of all reasonable inferences, if the evidence in the record, viewed in this manner, would not  support a jury verdict for the nonmoving party, summary judgment should issue to save the parties, the court and the public the expense of an unwarranted trial.  Knox v. City of New Haven, 357 F. Supp. 2d 449, 451-52 (D. Conn. 2005) (citations omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (stating that the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant).

## B.    Legal Standard for Interpretation of Insurance Contracts

Interpretation of an insurance policy presents a question of law.  Wentland v. Am. Equity Ins. Co., 267 Conn. 592, 600, 840 A.2d 1158 (2004).  Under Connecticut law, an insurance contract is construed according to the general rules of contract construction. Heyman Assocs. No. 1 v. Ins. Co. of the State of Pa., 231 Conn. 756, 769-770, 653 A.2d 122 (1995).

> If the words in the [insurance] policy are plain and unambiguous, the established rules for the construction of contracts apply.  The language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties.

Hammer v. Lumberman's Mut. Cas. Co., 214 Conn. 573, 583, 573 A.2d 699 (1990). Ambiguous terms are generally read in favor of coverage, but this approach "applies only when the terms are, without violence, susceptible of two equally reasonable interpretations.  The fact that the parties advocate different meanings of the insurance

- 11 -

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

policy does not necessitate a conclusion that the language is ambiguous." <u>Misiti, LLC v.</u>
<u>Travelers Prop. Cas. Co. of Am.</u>, 308 Conn. 146, 155, 61 A.3d 485 (2013) (internal
quotation marks, citations, and alterations omitted).  Since a party's "subjective
perception of the terms" does not bear on the court's interpretation of the policy
provisions, <u>see</u> <u>Zulick v. Patrons Mut. Ins. Co.</u>, 287 Conn. 367, 373, 949 A.2d 1084
(2008), it follows that "[u]nder Connecticut law, the insured is charged with knowledge of
the terms and conditions of the policy." <u>Am. Home Assurance Co. v. Abrams</u>, 69 F.
Supp. 2d 339, 351-52 (D. Conn. 1999).

## IV.   LAW & ARGUMENT

### A.   The Effect Of Plaintiffs' Failure To Respond To Requests For Admission

On June 1, 2017, CSAA served <u>Requests for Admission</u> upon the Plaintiffs. The
Plaintiffs never objected or responded to the requests, let alone do so timely. See Local
Rule 56(a)1 Statement,  Exhibit G. Under Federal Rule 36, "[a] matter is admitted
unless, within 30 days after being served, the party to whom the request is directed
serves on the requesting party a written answer or objection addressed to the matter
and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).  This strict rule
deeming untimely responses admitted is necessary, because "[a]n important purpose of
the rule is to reduce the cost of litigation . . . by narrowing the scope of disputed issues .
. . facilitating the succinct presentation of cases to the trier of fact . . . and eliminating
the necessity of proving undisputed facts." <u>Thalheim v. Eberheim</u>, 124 F.R.D. 34, 35
(D. Conn. 1988).  Rule 36 admissions, including those deemed admitted by a party's

225 Asylum Street
Hartford, CT 06103


HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

failure to respond, may be used for a Rule 56 summary judgment.  <u>Donovan v. Carls</u>

<u>Drug Co.</u>, 703 F.2d 650, 651 (2d Cir. 1983), rejected on other grounds by <u>McLaughlin v.</u>

<u>Richland Shoe Co.</u>, 486 U.S. 128, 133-34, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); <u>see</u>

<u>also</u> <u>SEC v. Batterman</u>, No. 00 Civ. 4835(LAP), 2002 WL 31190171, at *8 (S.D.N.Y.

Sept. 30, 2002) (granting summary judgment based on "[t]he foregoing facts, deemed

admitted under Rule 36").  In addition, the non-responding party may not "attack issues

of fact established in [Rule 36] admissions by resisting a motion for summary judgment."

<u>U.S. v. Kasuboski</u>, 834 F.2d 1345, 1350 (7th Cir. 1987); <u>accord</u> <u>O'Bryant v. Allstate Ins.</u>

<u>Co.</u>, 107 F.R.D. 45, 48 (D.Conn. 1985) (noting that plaintiff "has not answered, denied

or objected" to defendant's requests for admission, rejecting plaintiff's attempt to "create

a record contradicting [deemed] admissions in order to blunt [defendant's] motion for

summary judgment," and determining "that when the rule makers provided that a matter

was conclusively established, that was the end of any dispute on that matter").

      Based on the absence of responses or objections to the <u>Requests for Admission</u>,

Plaintiff Bart Zamichiei admitted on December 28, 2015 that the cracking problems with

his foundation "began several years ago." See Local Rule 56(a)1 Statement at 20 and

Exhibits G and H thereto. He made this admission on both his behalf and that of his

wife, Plaintiff Tammy Zamichiei. Id. at 18. This admission comports with the record

testimony and earlier admissions. See Local R. 56(a)1 Statement at 14.

**B.    Suit Against CSAA Is Barred By The Policy's Suit Limitation Provision**

      The Policy contains a suit limitation provision which directs that any action must

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

be brought "within two years after the date of loss."  Local R. 56(a)1 Statement at ¶ 10.[4]

Because there is no genuine issue of material fact that the loss or damage complained

of occurred more than two years before the Plaintiffs initiated this action, and because

the undisputed facts establish that the Plaintiffs knew of the loss more than two years

before they initiated suit, the Plaintiffs' lawsuit is barred.  Accordingly, entry of summary

judgment is appropriate.

 It is well-established in Connecticut that a provision in an insurance policy or

contract requiring suit to be brought within a specified time is a valid contractual

obligation.  See Monteiro v. Am. Home Assurance Co., 177 Conn. 281, 283, 416 A.2d

1189 (1979) (upholding trial court's grant of summary judgment where the plaintiff failed

to bring suit within one year of the alleged loss as required by the contracts of

insurance); see also Bocchino v. Nationwide Mut. Fire Ins. Co., 246 Conn. 378, 383,

716 A.2d 883 (1998) (holding that the policy provision requiring that an action be

brought within twelve months of the date of loss is both binding and valid); Chichester v.

New Hampshire Fire Ins. Co., 74 Conn. 510, 51 A. 545 (1902) (stating that "[a suit

limitation] provision in a contract of insurance is valid and binding upon the parties").

The provision in the policy (or language that is substantively identical) has been

interpreted and applied by numerous courts, and its meaning is not open to any

reasonable dispute.  To comply with this provision, the Plaintiffs must have commenced

---

[4]  This language tracks Connecticut's statutory form fire insurance policy.  The current form policy requires suits to be commenced within two years, see Conn. Gen. Stat. § 38a-307.  This provision became "[e]ffective [on] October 1, 2014, and [is] applicable to policies *issued or renewed on or after said date*." 2014 Conn. Legis. Serv. P.A. 14-175, § 3 (H.B. 5502) (emphasis added).

HALLORAN
&SAGE LLP

225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

litigation within two years after they learned or should have learned of the <u>loss</u> – <u>not</u> the date their claim was made or denied.  See <u>Roberts v. Amica Mut. Ins. Co.</u>, 2015 WL 7458510, at *3 (D. Conn. Nov. 24, 2015) (Underhill, J.). <u>Perez v. State Farm Fire & Cas. Co.</u>, No. DBDCV136012334S, 2015 WL 1588382, at *6 (Conn. Super. Ct. Mar. 13, 2015) (interpreting identical provision); <u>see also</u> <u>Knapp v. New London County Mut. Ins. Co.</u>, 2015 WL 3974384, at *6 (Conn. Super. Ct. June 1, 2015) (substantively identical clause "plainly required the commencement of litigation within the stated period"); <u>Riggs v. Standard Fire Ins. Co.</u>, 2006 WL 416201, at *2 (Conn. Super. Ct. Feb. 7, 2006) (same); <u>Collins v. Peerless Ins. Co.</u>, 2004 WL 114490, at *3 (Conn. Super. Ct. Jan. 6, 2004) (same).

For example, in <u>Roberts</u>, the District Court applied a contractual limitations provision under decidedly similar facts to bar the plaintiffs' suit for a crumbling concrete claim.  The court held that the policy's limitations period began running on the date the plaintiffs "learned or should have learned of the cracking in their basement walls." <u>Id.</u> at *3.  Because the plaintiffs did not serve the insurer until after expiration of the suit limitations period, the complaint was dismissed as untimely.  <u>Id.</u> at *5.  Numerous other state and federal courts in Connecticut have similarly applied contractual limitations periods to grant summary judgment in favor of insurers.  <u>See, e.g.</u>, <u>Craig v. Colonial Penn Ins. Co.</u>, 335 F. Supp. 2d 296 (D. Conn. 2004) (granting insurer's summary judgment motion where insurer did not file suit within one-year suit limitation provision); <u>Lee v Safeco Ins. Co. of Am.</u>, 2008 WL 2745944 (Conn. Super. Ct. June 16, 2008) (granting insurer's summary judgment motion where insurer was served nearly two

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

years after the date of loss); <u>Browning v. Peerless Ins. Co.</u>, 2007 WL 1247226 (Conn. Super. Ct. Apr. 13, 2007) (granting insurer's summary judgment motion where loss due to frozen pipes occurred on January 19, 2004, and suit was not served on insurer until May 11, 2005.); <u>Kenneth v. One Beacon Ins.</u>, 2005 WL 3047226 (Conn. Super. Ct. Oct. 25, 2005) (granting insurer's summary judgment motion where loss due to fire occurred on January 4, 2003, and suit was not served on insurer until January 8, 2004).

In the case at bar, the undisputed facts establish that the cracks in the Plaintiffs' basement walls and foundation – that is the loss – occurred many years before the Plaintiffs initiated suit.  Plaintiff Bart Zamichiei admitted he first saw a horizontal crack "about" three or four years before his April 24, 2017 deposition.  Local R. 56(a)1 Statement at ¶14.  This places his awareness of the loss sometime between April 2013 and April 2014.  Further, both Plaintiffs admitted on December 28, 2015 that the horizontal and vertical spiderweb-like cracking in their basement foundation walls began "several years ago."  Local R. 56(a)1 Statement at ¶20.  "Several" is defined as "more than one or two."  <u>See</u> Black's Law Dictionary (10th Ed., 2014).  A fortiori, the Zamichieis have admitted knowing about their cracking foundation since <u>at least</u> December 2013.

The Plaintiffs served CSAA on May 2, 2016,[5] meaning that to be timely, the loss must have occurred on or after May 2, 2014.  However, the clear and indisputable facts demonstrate that the loss has existed since at least 2013.  Because the Plaintiffs did not bring this action within two years of when they "learned or should have learned of the

---

[5] <u>See</u> Local R. 56(a)1 Statement at ¶2.

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

cracking in their basement walls," their suit must be dismissed as untimely.  <u>Roberts</u>,

2015 WL 7458510, at *3.  Accordingly, judgment as a matter of law should enter in favor

of CSAA.

**C.      Suit Against CSAA Is Barred Because The Property Damage
          Occurred Outside Of The Policy Period**

The Plaintiffs' claim is further barred because the property damage for which the

Plaintiffs seek recovery occurred outside of the policy period and prior to the inception

of coverage.  In fact, the undisputed facts establish that the damage for which the

Plaintiffs seek to recover existed prior to the inception of coverage.  Accordingly,

judgment as a matter of law should enter in CSAA's favor.

The Policy's Conditions provide, in pertinent part, as follows:

P.      Policy Period.

This policy applies only to loss which occurs during the policy period.

Local R. 56(a)1 Statement at ¶10.

The Plaintiffs' admissions establish that the damage complained of existed prior

to the inception of coverage with CSAA.  <u>Id.</u> at ¶¶14-20.  By the Plaintiffs' own

allegations and expert testimony, the concrete is itself defective and had impaired the

structural integrity of the Premises since it was poured.  <u>Id.</u> at ¶¶21-28.  Because the

visible cracking and damage was present prior to the inception of coverage with CSAA,

there is no coverage for the Plaintiffs' claim.  Accordingly, judgment as a matter of law

should enter in CSAA's favor.

**D.      The Policy's Additional Coverage for Collapse Is Not Triggered Given
          The Undisputed Facts**

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Based upon the allegations of the Complaint, the Plaintiffs seek coverage under the Policy's Additional Coverage for Collapse.  Amended Compl., ¶11.  In <u>Alexander v. General Ins. Co. of Am.</u>, No. 3:16-cv-00059 (SRU), Judge Underhill issued a ruling from the bench dismissing almost identical claims under the same policy language.  <u>See</u> Exhibit 1, pp. 20-25.  In <u>Alexander</u>, Judge Underhill found that "coverage is barred by the terms of the collapse provision in the policy which . . . defines 'collapse' to mean an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose, and then there are three little subparts. . . ."  <u>Id.</u> at p. 22.  Applying the policy language, Judge Underhill went on to find that "there has been no abrupt falling down or caving in of a building or any part of a building for which coverage applies, and there's not been a clear allegation that any building or part of a building cannot be occupied for its intended purpose."  Furthermore, "[e]ven if that had been met, what we have here is a building that is in danger of falling down, and that is expressly excluded from collapse coverage; and, similarly, there has been cracking, bulging, etc.," which are also excluded.  <u>Id.</u> at p. 23.  Finally, the Court noted that "[i]n other cases with different policy language I have found the term 'collapse' to be ambiguous, but here the term has been expressly defined in a way that eliminates coverage under the allegations of the complaint, both because there's not any allegation of any abrupt situation that occurred, there's not an allegation that the home or a part of the home has either fallen down or caved in, there is an allegation that it's in danger of falling down or caving in, and there's allegations, in

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

effect, of cracking and bulging."  On this basis, the policy language was deemed clear and unambiguous.  Id.[6]

The Defendant anticipates that the Plaintiffs will rely upon a readily distinguishable decision which found the undefined and unqualified term "collapse" to be "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building."  Beach v. Middlesex Mut. Assur. Co., 205 Conn. 246, 252 (1987).  However, unlike the Middlesex Mutual policy that was at issue in Beach, where the term "collapse" was not defined, the CSAA Policy clearly and unambiguously defines "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose."  See Local R. 56(a)1 at ¶9.  This collapse provision has been found to be clear and unambiguous in this jurisdiction and beyond.  Id.; see also Squairs v. Safeco Nat. Ins. Co., 136 A.D.3d 1393, 25 N.Y.S. 3d 502 (2016) (finding definition of "collapse" was unambiguous); Miller v. First Liberty Ins. Co., 2008 WL 2468605, *4 (E.D.Pa. June 17, 2008) (entering judgment in favor of insurer based upon unambiguous "collapse" provision); Residential Management (N.Y.) v. Fed. Ins. Co., 2012 WL 3288671, *9 (E.D.N.Y. Aug. 10, 2012) (finding policy contains a "clear definition of 'collapse' to clarify any potential ambiguity"); Rector St. Food v. Fire & Cas. Ins. Co. of Ct., 35 A.D.3d 177, 827 N.Y.S.2d 18 (2006).

---

[6]  The plaintiffs in Alexander moved for reconsideration, which motion Judge Underhill denied on January 17, 2017.  See Ex. 2, attached hereto. Thereafter, the plaintiffs appealed to the U.S. Court of Appeals for the Second Circuit (Docket Number 16-3166).  The appeal has since been withdrawn with prejudice.  See Ex. 3 attached hereto.

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In an attempt to defeat the Defendant's claim that the policy's collapse coverage has not been triggered, the defense also expects Plaintiffs to rely on two out of state cases, in addition to <u>Beach v Middlesex Mut. Assurance Co.</u>  In doing so, they will ignore Judge Underhill's decision in <u>Alexander v General Ins. Co. of Am.</u>

In <u>Malbco Holdings LLC v Amco Insurance Co.</u>, 629 F. Supp 2d 1185 (D. Or. 2009), ambiguity was found based on a nearly uninhabitable building.  The structure was in dangerous physical condition due to a sagging floor and the city was prepared to shut down the entire building, but for emergency shoring.  In the case at bar, it is undisputed that the Plaintiffs' house is still standing, has not abruptly fallen down or caved in, and they are using it for its' intended purpose.  <u>See</u> Local Rule 56(a)1 Statement, ¶¶23-27.

The Plaintiffs will also rely on the decision in <u>130 Slade Condominium Association Inc. v Millers Capital Ins. Co.</u>, (D. Md. 2008).  The <u>130 Slade Condo</u> court did not, in fact, resolve the issue of ambiguity.  Instead, the court found that the policy affords coverage whether it found that the collapse provision was ambiguous or unambiguous.

The Connecticut Superior Court recently rejected the holdings of both <u>Malbco</u> and <u>130 Slade Condominium</u> in <u>Jemiola v Hartford Casualty Ins. Co.</u>, 2017 WL 1258778 (Cobb, J.) (attached hereto as Exhibit 4) and in lieu thereof, embraced the findings and rationale of the Court in <u>Alexander</u>.

Here, by the Plaintiffs' own allegations, testimony and the expert opinions, the Premises has not sustained a "collapse" as defined by the Policy.  <u>See</u> Local Rule

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

56(a)1 Statement at ¶43.  There has been no abrupt falling down or cave in.  Id. at ¶31.

Notably, the Plaintiffs have acknowledged that the Premises is still standing and being

used for its intended purpose.  Id. at ¶¶31-32.  Even if, as the Plaintiffs claim, the

Premises is *in danger* of falling down at some point in the future and/or has sustained

cracking or bulging of the basement walls, that would not satisfy the Additional

Coverage – Collapse language.  Id.; see also Ex. 1, pp. 20-25 (same).

Based upon the foregoing, there is no genuine issue of material fact that the

state of the Premises' foundation and basement walls is the result of a progressive

condition, as opposed to an abrupt falling down or caving in.  The Premises remains

standing and is being used for its intended purpose, and the Plaintiffs' own expert

admitted that the Premises was not in a state of collapse at the time of his 2015

inspection.  Local R. 56(a)1 Statement at ¶¶31, 32 and 43.  Further, like the insureds in

Alexander, the Plaintiffs improperly seek to recover for bulging and/or cracking under

the Additional Coverage - Collapse.  For all the foregoing reasons, there is no coverage

for the Plaintiffs' claim and, therefore, judgment as a matter of law should enter in

CSAA's favor.

### E.  The Undisputed Facts Establish That Coverage Is Barred Because The Plaintiffs' Loss Is Not An Accidental, Fortuitous Loss

There is no genuine issue of material fact that the Plaintiffs seek insurance

proceeds for the cracking foundation and basement walls of the Premises that resulted

from an internal chemical reaction in the concrete used to construct the foundation and

basement walls.  This damage was inevitable and unavoidable from the date the

- 21 -

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

concrete foundation was poured.  Local R. 56(a)1 Statement at ¶¶21, 23-24.  Because the policy provides coverage only for accidental, fortuitous losses, there is no coverage for the Plaintiffs' claim.

The Plaintiffs' Policy is an "all-risk" policy as to property damage.  However, "all-risk" does not mean "all-loss."  City of Burlington v. Indem. Ins. Co. of N. Am., 332 F.3d 38, 47 (2d Cir. 2003).  "Even in an 'all risk' policy, there must be a fortuitous event -- a casualty -- to give rise to any liability for insurance."  Id.; see also Conn. Ins. Law, § 5-1, p. 136 (2011) ("Stated simply, all-risk policies cover losses that are caused by 'fortuitous and extraneous' events where there is no express provision excluding coverage.").  A loss that is inevitable is not a covered risk.  City of Burlington, 332 F.3d at 47.

For decades, courts have held that "losses that resulted from an inherent quality or defect in the thing insured" are "non-fortuitous – and therefore outside the scope of coverage."  Id. at 47; Glassner v. Detroit Fire & Marine Ins. Co., 127 N.W.2d 761, 764 (Wis. 1964) ("An 'all-risk' policy . . . is not a promise to pay for loss or damage which is almost certain to happen because of the nature and inherent qualities of the property insured.").  Even in the absence of an express exclusion, "[d]amage which is certain and inevitable and which either (1) proceeds from an inherent vice or infirmity present at the time that the policy was issued as a veritable time-bomb, already set and ticking . . . or (2) is the natural, expected result of normal wear and tear or deterioration. . . is not the result of a casualty and cannot be covered."  Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F. Supp. 164, 191 (D. Conn. 1984) (citations omitted).  Thus, "an all

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

risk policy covers only losses caused by 'fortuitous and extraneous' events." Id. (citations omitted).

Under Connecticut law, "the insured bears the burden of showing that insurance coverage covers the loss, but the insurer bears the burden of showing that an exclusion applies to exempt it from covering a claim." MBIA Inc. v. Federal Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011) (recognizing that New York and Connecticut law were identical in this respect).  In order to satisfy its burden of proof, "the all risk insured has generally met his burden of proof by establishing  . . . 'a fortuitous loss within comprehensive coverage though not proving exactly what caused it'." Standard Structural, 597 F. Supp. at 192 (citations omitted).  This showing has been articulated to require proof that (1) a fortuitous loss took place (2) not arising from an inherent defect in the subject matter but occurring as a result of an extraneous or external cause (3) that there was no fraud or intentional misconduct and (4) that the insured risk was a lawful one.  Id.

Here the facts, as supported by the testimony and reports of the experts, demonstrate that the damage to the foundation and basement walls was the result of non-fortuitous events – it arose from an inherent defect in the concrete and was not the result of an extraneous or external cause.  Local R. 56(a)1 Statement at ¶¶21, 23, 24, 31.  In fact, the Plaintiffs' own expert acknowledged that an inherent defect in the form of improper materials used in the concrete caused the cracking and that the damage raised in the lawsuit was simply lying in wait since the concrete was poured.  Id. at ¶25. CSAA's expert likewise has opined that cause of the Plaintiffs' cracking foundation is defective concrete, inherent since its initial placement, and is an ongoing condition that

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

began years before 2015.  Id. at 45.  The Plaintiffs' foundation functioned as intended, was not at imminent risk of falling down or caving in, and did not require immediate replacement.  Id at 46.  Because the material used to construct the concrete foundation at the time the house was constructed was defective, so was the concrete foundation from the time it was poured, thereby rendering the cracking inevitable.  For these reasons, the Plaintiffs' loss is not an accidental, fortuitous loss and as such, there is no coverage.

    **F.**    **The Undisputed Facts Establish That Coverage Is Unambiguously Barred By Numerous Exclusions**

Beyond the Additional Coverage-Collapse, there is no coverage because the damage was caused by an inevitable internal chemical reaction in the concrete and is therefore barred by unambiguous exclusions.  Specifically, the policy expressly excludes coverage caused by, wear, tear, marring, deterioration, inherent vice, latent defect or mechanical breakdown.  See Local R. 56(a)1 Statement at ¶7.  It further provides that there is no coverage for losses caused by faulty, inadequate or defective materials used in repair, construction, renovation or remodeling.  Because the loss was not fortuitous and instead was the result of inherent vice, latent defect, and/or defective and inadequate materials used in construction, repair, renovation or remodeling and/or workmanship, these exclusions unambiguously bar coverage under the undisputed facts.  Finally, because the Plaintiffs seek to recover for loss or damage caused by and/or consisting of settling, shrinking, bulging or expansion of foundation, walls and/or floors, coverage is barred.

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

1.    <u>The Plaintiffs' Damage Is The Result Of Wear And Tear,
      Marring, Deterioration, Latent Defect, Inherent Vice Or Any
      Quality In Property That Causes It To Damage Or Destroy Itself</u>

While Connecticut courts have had only limited occasion to consider this exclusionary language, it is beyond dispute that the Plaintiffs' claimed loss was caused by deterioration, latent defect, inherent vice or a quality in the concrete that causes it to damage or destroy itself and therefore is excluded from coverage. <u>Ehsan v. Ericson Agency</u>, 2003 WL 21716345 (Conn. Super. Ct. July 3, 2003), ("[g]iven the context of the word in this policy, adjacent to the terms 'wear and tear' and 'deterioration,' the term is meant to include that marring of appearance caused by wear and tear or deterioration resulting from the reasonable and normal use of an object over time"); <u>Waldron v. Richardson</u>, 1992 WL 361501, *6 (Conn. Super. Ct. Nov. 25, 1992) (finding "'[r]easonable wear,' 'ordinary wear and tear' and similar phrases apply more naturally to the gradual deterioration resulting from use, lapse of time and to a certain extent to the operation of the elements, but do not cover destruction in whole or in part of a structure by a sudden catastrophe"); <u>Brodkin v. State Farm Fire & Cas. Co.</u>, 265 Cal. Rptr. 710, 714 (Cal. Ct. App. 1989) ("The plain meaning of the exclusion is the insurer will not cover slow-moving disintegration or corrosion of the concrete foundation because of external forces.").

Beyond Connecticut, in <u>Garson Management Co., LLC v. Travelers Indemnity Co. of Illinois</u>, 752 N.Y.S.2d 696 (N.Y. App. Div. 2d Dep't 2002), the New York Appellate Division addressed the issue whether there was coverage for corroded structural steel beams that were only discovered when a chunk of concrete fell from a portion of the

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

insured garage.  The court concluded that there was no coverage and summary judgment was appropriate because "the plain meaning of the [deterioration] exclusion was to relieve the insurer of liability when its insured sought reimbursement for costs incurred in correcting corrosion and deterioration . . . ." Id. at 697.

Here, the chemical reaction which the Plaintiffs identify as the cause of the cracking to their foundation and basement walls is precisely the type of deterioration, marring, inherent vice and/or latent defect that the Policy excludes from coverage. Local R. 56(a)1 Statement at ¶¶21-28.  The Plaintiffs' expert opined that the crumbling concrete is the result of an inherent defect present at the time the concrete was poured. Id.  This aligns with the opinion of CSAA's expert. Id. at 45.  The defective material has been lying in wait since the concrete was poured.  Based upon the foregoing, the cracking condition, which resulted from an inherent defect in the concrete that caused a chemical reaction, is the result of wear, tear, marring, deterioration and/or inherent vice. Accordingly, the Policy does not afford coverage for the Plaintiffs' loss and judgment as a matter of law should enter in favor of CSAA.

2.    <ins>The Cracking And Bulging Foundation And Basement Walls Are The Result Of Faulty, Inadequate Or Defective Construction And/or Materials Used in Repair, Construction, Renovation Or Remodeling</ins>

Furthermore, coverage is also precluded because the compromised foundation of the Premises consists of faulty, inadequate or defective construction and/or material used in repair, construction, renovation or remodeling.  Indisputably, the chemical reaction which the Plaintiffs have identified as the cause of the cracking is the result of

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

faulty, inadequate or defective materials and/or workmanship in the pouring of the concrete foundation.  Accordingly, coverage is barred by the unambiguous exclusion for faulty, inadequate or defective "materials used in repair, construction, renovation or remodeling."  Local R. 56(a)1 Statement at ¶8.

This unambiguous exclusion has been routinely applied to bar coverage for property damage caused by defective and/or inadequate materials used in construction. see also Rhoden v. State Farm Fire & Cas. Co., 32 F. Supp. 2d 907, 914 (S.D. Miss. 1998) (noting that an identical exclusion "specifically states" that a loss resulting from the allegedly defective construction work is not covered under a homeowner's policy), aff'd sub nom. Rhoden v. State Farm Fire, 200 F.3d 815 (5th Cir. 1999); Bloom v. W. Nat. Mut. Ins. Co., No. A05-2093, 2006 WL 1806415, at *3 (Minn. Ct. App. July 3, 2006) (applying exclusion which provided, in pertinent part, that no coverage would be provided for "defect, weakness, the inadequacy, fault, or unsoundness in materials used in construction or repair of the home"); Padgett v. State Farm Fire & Cas. Co., 714 So. 2d 302, 304 (Ala. Civ. App. 1997) (affirming a trial court's grant of summary judgment finding that an insured's claim was precluded from coverage due to an exclusion for "defect in materials used in construction or repair"); George v. State Farm Lloyds, 2014 WL 2481894, at *3 (Tex. Ct. App. May 19, 2014) (finding an identical exclusion to be unambiguous).

Courts in this jurisdiction and beyond have also found this exclusion to unambiguously bar coverage for loss or damage caused by faulty workmanship.  See Edmond v. Hartford Ins. Com., 2008 WL 616092 (D. Conn. Mar. 3, 2008) (granting

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

homeowners insurer's motion for summary judgment as there was no evidence that property damage was caused by anything but faulty workmanship); see also Alwart v. State Farm Fire & Cas. Co., 508 S.E.2d 531, 534 (N.C. 2008) (granting summary judgment in favor of the defendant insurer and finding that faulty workmanship exclusion was unambiguous); see also Rhoden, 32 F. Supp. 2d at 913-14 (granting summary judgment in favor of the defendant insurer after finding that the faulty "workmanship" exclusion applied so as to preclude coverage for damages the plaintiffs sustained as a result of cracking in the foundation of their residence); Smith v. State Farm Fire & Cas. Co., 425 S.E.2d 719, 720 (N.C. Ct. App. 1993) (noting that an identical faulty workmanship exclusion was not ambiguous); Myers v. State Farm Fire & Cas. Co., No. C8-02-62, 2002 WL 1547673, at *6 (Minn. Ct. App. July 16, 2002) (upholding a trial court's grant of summary judgment in favor of the defendant insurer and noting that an exclusion for "defective or inadequate design, workmanship, construction, grading, and compaction" applied to bar coverage for claimed losses); Bergeron v. State Farm Fire & Cas. Co., 766 A.2d 256, 260 (N.H. 2000) (quoting an identical exclusion as standing for the principle that "not every loss resulting from a defect in design or construction is covered; only those losses that are not themselves excluded by the policy are covered"); Murray v. State Farm Fire & Cas. Co., 268 Cal. Rptr. 33 (Ct. App. 4th Dist. 1990) (finding that the faulty workmanship exclusion applied to preclude coverage and opining "one might similarly argue that the predominating cause of the loss was the negligence of the individual or company who installed the [product] . . . . The . . . policy, however, specifically excludes coverage for any 'defect, weakness, inadequacy, fault or

- 28 -

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

unsoundness in ... design, specifications, workmanship, construction [or] materials used

in construction ... of any property."); <u>Waldsmith v. State Farm Fire & Cas., Co.</u>, 283 Cal.

Rptr. 607, 608-09 (Ct. App. 1991) (noting that a plaintiff's policy "contains the same

language and commands the same result" as <u>Murray</u>" (<u>supra</u>)); <u>McDonald v. State Farm

Fire& Cas. Co.</u>, 837 P.2d 1000, 1005-06 (Wash. 1992) (upholding a trial court's granting

of summary judgment and applying "faulty workmanship and materials exclusion" to find

that losses "consisting of ... defect, weakness, inadequacy, fault or unsoundness in

design, specifications, workmanship, construction, grading, compaction" were excluded

under the policy).

By the Plaintiffs' own testimony, allegations and expert testimony, the cracking

foundation is the result of defective materials contained in the concrete that was used to

construct their foundation and basement walls.  Local R. 56(a)1 Statement at ¶¶21-28.

In this respect, it is beyond dispute that the spider web cracks were the result of

defective, weak, inadequate, faulty and/or unsound workmanship, construction and/or

materials used in construction of the Premises.  In fact, the Plaintiffs' own expert

testified that offending materials within the concrete were present from day one, lying in

wait.  <u>Id.</u> at ¶23, 25.  Furthermore, if it is found that the Plaintiffs' damage was instead

caused, in whole or in part, by defective workmanship, the result is the same.  In either

case, the Plaintiffs' claims are unambiguously barred by this exclusionary language.

3.   <u>The Cracking Basement Walls Are Subject To The "Cracking"
     Exclusion</u>

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No  26105

Finally, it is beyond dispute that the Plaintiffs seek to recover for loss or damage caused by settling, shrinking, bulging or expansion cracking of their foundation and/or basement walls.  Because the CSAA policy expressly excludes coverage for such settling, shrinking, bulging or expansion and resulting cracking, there is no coverage for the Plaintiffs' claim.

The cracking exclusion is "unambiguous."  McDonald v. State Farm Fire & Cas. Co., 837 P.2d 1000, 1006 (Wash. 1992).   By their plain terms, similar cracking exclusions have been found to apply to cracks in basement or foundation walls.  See Rhoden, 32 F. Supp. 2d at 913 ("find[ing] that the 'settling/cracking' exclusion applies to bar coverage for damage to Plaintiff's claim as a result of the cracking of the foundation of the residence"; granting summary judgment for State Farm); Montee v. State Farm Fire & Cas., 782 P.2d 435, 436 (Or. Ct. App. 1989) (finding cause of loss had no bearing on whether it consisted of excluded damage); Brodkin, 265 Cal. Rptr. at 713-14; Indiana Ins. Co. v. Liaskos, 697 N.E.2d 398, 406 (Ill. App. Ct. 1998) (applying "the explicit language of the policy which excludes loss caused by 'settling, cracking, shrinking, bulging or expansion of foundations, walls, floors . . . .'").

It is beyond dispute that the Plaintiffs seek to recover for cracks and bulging of their foundation and/or walls. For this reason as well, coverage is excluded under the unambiguous terms of the policy.

## V.   CONCLUSION

Based upon the foregoing, the Defendant CSAA respectfully moves for the entry of judgment as a matter of law as to the Plaintiffs' Amended Complaint.

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

THE DEFENDANT,
**CSAA FIRE & CASUALTY INSURANCE COMPANY**

*/s/Daniel P. Scapellati*
Daniel P. Scapellati
Federal Bar No. ct03855
Carl R. Ficks, Jr.
Federal Bar No. ct03342
Halloran & Sage LLP
225 Asylum Street
Hartford, CT  06103
Telephone: (860) 522-6103
scapellati@halloransage.com
ficks@halloransage.com

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATION OF SERVICE

This is to certify that on this 24th day of July, 2017, a copy of the foregoing Memorandum of Law in Support of Motion for Summary Judgment has been filed electronically on the Court's CM/ECF system.  Notice of this filing will be sent to all counsel of record for viewing via the Court's ECF system.

Brian D. Danforth, Esq.
Tolisano & Danforth, LLC
P.O. Box 676
Ellington, CT 06029
bdanforth@tanddlaw.com

/s/Daniel P. Scapellati
Daniel P. Scapellati

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

4926183v.1