UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BART ZAMICHIEI, ET AL. )<br>)<br>Plaintiffs, )<br>)<br>V. )<br>)<br>)<br>CSAA FIRE & CASUALTY )<br>INSURANCE COMPANY )<br>Defendant. ) | CIVIL ACTION NO.<br>3:16-CV-00739-VAB<br><br><br><br><br><br><br><br>OCTOBER 6, 2017 |

### DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to Local R. 7(d), the Defendant, CSAA Fire & Casualty Insurance Company (hereinafter "CSAA"), hereby replies to the Plaintiffs' Memorandum of Law in Opposition to CSAA's Motion for Summary Judgment.

I. **THE PLAINTIFFS HAVE FAILED TO CONTROVERT THE STATEMENT OF MATERIAL FACTS SET FORTH IN CSAA'S LOCAL RULE 56(A)1 STATEMENT NOR HAVE THEY RAISED, IN THEIR LOCAL RULE 56(A)2 STATEMENT, ANY ISSUES OF MATERIAL FACT AS TO WHICH THERE IS A GENUINE ISSUE TO BE TRIED**

CSAA's Rule 56(a)1 Statement sets forth 50 material facts as to which it contends there is no genuine issue to be tried. In the Plaintiffs' Rule 56(a)2 Statement, they admit all of these facts with the exception of paragraphs numbered 43 and 49. However, as explained below, the Plaintiffs fail to controvert either of these paragraphs by way of their Rule 56(a)2 Statement. Further, the Plaintiffs' Rule 56(a)2 fails to include a list of each issue of material fact as to which they contend there is a genuine issue to be tried. While the Plaintiffs' Rule 56(a)2 does include a separate section entitled "Disputed Issues of Material Fact", the facts listed therein are not material facts as to which there is a genuine issue to be tried. Put simply, as argued below, the

Plaintiffs have failed to raise any genuine issues of material fact that would preclude summary judgment in favor of CSAA.

In their Rule 56(a)2 Statement, the Plaintiffs deny paragraphs 43 and 49 contained in CSAA's Rule 56(a)1 Statement. However, CSAA supported paragraph 43 by citing to deposition testimony of the Plaintiffs' expert, William Neal, and it supported paragraph 49 by citing to the Plaintiffs' Amended Complaint. The Plaintiffs offer no evidentiary support for their bare denials and thus, the denials are plainly insufficient.

When "a motion for summary judgment is properly supported by documentary and testimonial evidence . . . the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of fact." Marczeski v Gavitt, 354 F. Supp. 2d 190, 193 (D. Conn. 2005) (citing Celotex Corp. v Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548(1986). Moreover, when a party fails to appropriately deny material facts set forth in the moving party's 56(a)1 statement, and when those facts are supported by evidence in the record, those facts are deemed to be admitted. SEC v Global Telecom Servs. L.L.C., 325 F.Supp.2d 94, 109 (D.Conn.2004). Here, the Plaintiffs have failed to appropriately deny, with admissible evidence, any of the 50 material facts contained in the Defendant's Local Rule 56(a)1 Statement and thus, these facts are deemed admitted. Where the evidence offered consists of conclusory assertions lacking further support in the record, summary judgment may lie. Fincher v Depository Trust and Clearance Co., 604 F. 3rd 712, 726-727 (2d Cir. 2010).

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## II. THE PLAINTIFFS' RULE 56(A)2 STATEMENT FAILS TO PRESENT GENUINE ISSUES OF MATERIAL FACT

Although the Plaintiffs have filed, pursuant to Local Rule 56(a) 2, a "statement of disputed facts and/or additional fact [sic] with respect" to their objection; See Docket Entry 37-1; the Plaintiffs' Statement does not present any genuine issues of material fact that would preclude summary judgment. In this respect, the "facts" contained in paragraphs 51 and 52 do not offer a complete recitation of policy provisions, as more fully articulated in Section V, *infra*. Further, the "facts" numbered 53 and 55 are not in dispute, and while "fact" 56 is admitted, that is of no moment, as more fully articulated in Section V, *infra*. Lastly, "fact" number 57 inappropriately references damages which are not at issue in this summary judgment phase. And in any event, "fact" 57, which references inadmissible hearsay testimony, does not comply with Local Rule 56(a)3 which states, in pertinent part, that each material fact in the Plaintiffs' Local Rule 56(a)2 Statement "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."

## III. THE TWO-YEAR SUIT LIMITATION PROVISION APPLIES

In an attempt to defeat the two-year contractual suit limitation, the Plaintiffs "urge" the Court to follow the First Circuit's decision in Parker v Worcester Insurance Company, 247 F.3d 1 (1st. Cir. 2001). See Docket Entry 37, p. 6. The First Circuit held in Parker that "in the case of a non-obvious injury or loss, the period begins to run when a reasonable person would have learned of the injury or loss." Id. at 4. The following facts, which the Plaintiffs do not dispute and have thus admitted, are instructive:

- 3 -

225 Asylum Street  
Hartford, CT 06103

HALLORAN  
&SAGE LLP

Phone (860) 522-6103  
Fax (860) 548-0006  
Juris No. 26105

- Plaintiff Bart Zamichiei testified he first observed a horizontal crack "about" three or four years before his April 2017 deposition;
- Plaintiff Bart Zamichiei admitted on his behalf, as well as on behalf of his wife, Plaintiff Tammy Zamichiei, that foundation deterioration with horizontal and vertical spiderweb-like cracking began "several years ago";

See Local Rule 56(a)1 and 56(a)2 Statements, ¶¶ 14-20.

This is not a "non-obvious" injury contemplated by the Parker court. The Plaintiffs have been on notice of the cracking for many years before they submitted their claim and filed the instant action. The opposition papers do nothing to dispute these facts.

The Plaintiffs attempt to dampen the impact of their admissions by stating that they "could even argue that it was not until William Neal, P.E. inspected the property on September 21, 2015 that [they] were realistically apprised of the seriousness of the condition of their home." See Docket Entry 37, p. 6. The Plaintiffs "could" argue this but apparently do not. A "defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial." Parker v Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir.2001).

## IV. COLLAPSE COVERAGE HAS NOT BEEN TRIGGERED

In an attempt to defeat CSAA's claim that the policy's collapse coverage has not been triggered, the Plaintiffs rely, as expected, on three federal cases and the

- 4 -

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Connecticut Supreme Court's decision in Beach v Middlesex Mut. Assurance Co., 205 Conn. 246 (1987). See Docket Entry 37, pp. 6-7. In doing so, they ignore Judge Underhill's decision in Alexander v General Ins. Co. of Am., No. 3:16-cv-00059 (SRU), appended to the moving papers as Ex. 1 (Docket Entry 31-1).

In Malbco Holdings LLC v Amco Insurance Co., 629 F. Supp 2d 1185 (D. Or. 2009), ambiguity was found based on a nearly uninhabitable building. The structure was in dangerous physical condition due to a sagging floor and the city was prepared to shut down the entire building, but for emergency shoring. Here, it is undisputed that the Plaintiffs' house is still standing, it has not abruptly fallen down or caved in, the foundation is performing its intended function and the Plaintiffs are using the house for its intended purpose. See Local Rule 56(a)1 and 56(a)2 Statements, ¶¶ 31-36.

The Plaintiffs also rely on the decision in 130 Slade Condominium Association Inc. v Millers Capital Ins. Co., (D. Md. 2008). However, the 130 Slade Condo Court did not resolve the issue of ambiguity. Instead, the Court found that the policy affords coverage whether it found that the collapse provision was ambiguous or unambiguous. Dalton v. Harleysville Worcester Mut. Ins. Co., 557 F3d 88 (2d Cir. 2009) does not help the Plaintiffs either. The "collapse" provision in the Dalton policy did not contain language requiring an "abrupt" event, like the CSAA policy, or an inability to occupy the premises for its intended purpose, like the policy herein.

The Connecticut Superior Court recently rejected the holdings of both Malbco and 130 Slade Condominium in Jemiola v Hartford Casualty Ins. Co., 2017 WL

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

1258778, appended to the moving papers as Exhibit 4 (Docket Entry 31-4) and in lieu thereof, embraced the findings and rationale of the Court in Alexander.[1]

## V.  THE "REASONABLE REPAIRS" COVERAGE STILL REQUIRES A "LOSS"

Recognizing that their policy does not afford coverage for their cracking foundation, the Plaintiffs curiously argue that the policy affords coverage for concrete foundation repair as an assertedly "necessary measure taken solely to protect covered property" from further damage. See Docket Entry 37, p. 10. This argument ignores crucial policy language in the policy's Additional Coverage for Reasonable Repairs. Specifically, the policy's Additional Coverage for Reasonable Repairs only applies where covered property is damaged by a Peril Insured Against. While the Plaintiffs' house is "covered property," the house has not been damaged by a Peril Insured Against. Thus, this additional coverage does not apply.

In this regard, the policy states, in pertinent part, as follows:

Section I – Property Coverages

\* \* \*

E. Additional Coverages

\* \* \*

    2.    Reasonable Repairs

           a.    We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

\* \* \*

---

[1] See also, Toomey v. Central Mutual Ins. Co., 2017 WL4159820 (Conn. Super. Ct. 2017) and Piacentini v. Travelers Home and Marine Ins. Co., No. CV16-6010341 (Conn. Super. Ct. Aug. 29, 2017) (adopting Jemiola and granting summary judgment for the insurer where policy contained collapse language identical to the policy herein). See **Exhibits 5 and 6** attached hereto.

- 6 -

225 Asylum Street  
Hartford, CT 06103

HALLORAN  
&SAGE LLP

Phone (860) 522-6103  
Fax (860) 548-0006  
Juris No. 26105

   8. Collapse

      a. This Additional Coverage applies to property covered under Coverages **A** and **B**. With respect to this Additional Coverage:

         (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

                        * * *

Section I – Perils Insured Against

1. We insure against risk of direct physical loss to property described in Coverages   **A** and **B**.
2. We do not insure, however, for loss:

   a. Excluded under Section I – Exclusions;

                        * * *

   c. Caused by:

                        * * *

      (6) Any of the following:

         (a) Wear and tear, marring, deterioration;
         (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

                        * * *

         (f) Settling, shrinking, bulging or expansion, including resultant cracking, of . . . foundations. walls, floors, roofs or ceilings . . . .

See Docket Entry 32-4 pp. 18, 21, 27 and 28.

Here, reading the policy as a whole and in a commonsensical fashion, it is readily apparent that an insured cannot avail himself of the Additional Coverage for

- 7 -

225 Asylum Street
Hartford, CT 06103


HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Reasonable Repairs where covered property is damaged by an uncovered cause of loss. The inclusion of the "Perils Insured Against" language in the coverage grant makes this absolutely clear.

## VI.     COVERAGE FOR CHEMICAL REACTIONS

The Plaintiffs argue that they are entitled to coverage because their loss was allegedly sustained due to a "chemical reaction." See Docket Entry 37, pp 8-9. Indeed, they argue that the "cracking, deterioration, and even the purported 'defective materials' are simply the result of the chemical reaction that is going on in the concrete . . . . The conditions purportedly barring recovery are imply [sic] manifestations of a physical loss that is occurring." Id. In England v Amica Mutual Ins. Co., 2017 WL 3996394 (D. Conn. 2017) (copy attached as **Exhibit 7**), Judge Shea recently described this very position/argument as "internally inconsistent: [the plaintiff] cannot plausibly allege that the 'loss' was the chemical reaction itself while at the same time alleging that the 'loss' consists of *'damages caused by a chemical reaction'*." (Emphasis supplied in original.)

The Court in England, when granting the defendant insurer's motion to dismiss, opined that arguing "that the chemical reaction itself is covered as a 'direct physical loss,' independent of any of its manifestations . . . is not a plausible reading of the Policies, because the terms 'direct physical loss' and 'loss,' as used in the Policies, unambiguously require some change to the detriment of the insured, and a chemical reaction -- without any physical manifestations -- does not fit that bill." The policy language analyzed by the Court in England mirrors that contained in the policy herein.

The England Court similarly rejected the plaintiff's second alternate theory,

- 8 -

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

namely that "she has suffered a 'direct physical loss' as a result of a chemical reaction, and coverage for losses due to chemical reactions are not excluded under the Policies, as the term 'chemical reaction' is not specifically listed among the exclusions in the Policies."  This mirrors the Plaintiffs' argument propounded herein,[2] and the Court found that it "does not matter whether the originating event behind the cracking and deterioration was a chemical reaction; the exclusions in the Policies make no exception for losses for which the cause is itself a product of a chemical reaction."  The policy herein specifically excludes loss "caused by . . . (a) wear and tear, marring and deterioration; (b) . . . latent defect, inherent vice or any quality in property that causes it to damage or destroy itself . . . (f) settling , shrinking, bulging or expansion, including resultant cracking of footings, foundations, walls, floors, roofs or ceilings."  See Docket Entry 32-4, p. 28 of 91.

Judge Underhill recently dismissed an identical "chemical reaction" coverage claim in Agosti v. Merrimack Mut. Fire Ins. Co., 2017 WL3710786 (D. Conn. 2017) (copy attached as **Ex. 8**).[3]  Judge Underhill examined the language of the policy, which expressly excluded "loss consisting of or caused by . . . settling, cracking, shrinking, bulging or expansion of . . . foundation [or] walls."  Id. at *3.  This mirrors the language in the subject policy herein.  The Court concluded that "their loss – if not considered an imminent collapse – clearly 'consist[s] of . . . settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls' . . . The technical source of the cracking or

---

[2] Counsel for the plaintiff in England represents the plaintiffs herein.

[3] Counsel for the plaintiffs in Agosti represents the plaintiffs herein.

- 9 -

225 Asylum Street
Hartford, CT 06103


HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

bulging is irrelevant." Id. at *4.

The Plaintiffs' allegations fit squarely within the policy exclusions and thus, align with the "implausibility" found by the Court in England and the "irrelevancy" of the cause of the cracking in Agosti. So too should this Court reject the Plaintiffs' "chemical reaction" arguments.

## VII.   CONCLUSION

For these reasons, and those already of record, it is respectfully submitted that the Defendant CSAA's Motion for Summary Judgment should be granted in its entirety.

- 10 -

225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

                        **THE DEFENDANT,**
                        **CSAA FIRE & CASUALTY INSURANCE COMPANY**

                        By */s/Daniel P. Scapellati*
                        Daniel P. Scapellati, Esq.
                        Federal Bar No. ct03855
                        Carl R. Ficks, Jr., Esq.
                        Federal Bar No. ct03342
                        Halloran & Sage LLP
                        225 Asylum Street
                        Hartford, CT  06103
                        Telephone: (860) 522-6103
                        scapellati@halloransage.com
                        ficks@halloransage.com

## CERTIFICATION OF SERVICE

     This is to certify that on this 6th day of October, 2017, a copy of the foregoing Reply Memorandum has been filed electronically on the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record for viewing via the Court's ECF system.

Brian D. Danforth, Esq.
Tolisano & Danforth, LLC
P.O. Box 676
Ellington, CT 06029
bdanforth@tanddlaw.com

                        */s/Daniel P.Scapellati*
                        Daniel P. Scapellati

- 11 -

5051026v.1
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105