UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BART ZAMICHIEI AND<br>TAMMY ZAMICHIEI,<br> Plaintiffs,<br><br>v.<br><br>CSAA FIRE & CASUALTY INSURANCE<br>COMPANY,<br> Defendant. | No. 3:16-cv-739 (VAB) |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Bart and Tammy Zamichiei ("the Zamichieis" or "Plaintiffs") sued CSAA Fire & Casualty Insurance Company ("CSAA" or "Defendant"), after CSAA denied coverage for visible cracking in concrete in the Zamichieis' unfinished basement, claiming breach of contract.

CSAA moves for summary judgment, arguing that the insurance policy at issue unambiguously covers only abrupt collapses—not, according to CSAA, an ongoing condition from which damage results. CSAA argues that it properly denied coverage and did not breach its contract.

For the following reasons, the motion is **GRANTED.**

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. FACTUAL ALLEGATIONS[1]

The Zamichieis live at 39 Old Monson Road in Stafford Springs, Connecticut ("Property"). Def.'s SMF ¶ 4.

#### 1. The Policy

CSAA issued a homeowners insurance policy ("Policy"), effective January 23, 2015 through January 23, 2016. The Policy provides, in pertinent part:

> SECTION I: PERILS INSURED AGAINST
> A. COVERAGE A – DWELLING AND COVERAGE B – OTHER STRUCTURES
>   1. We insure against risk of direct physical loss to property described in Coverages A and B.
>   2. We do not insure, however, for loss:
>     a. Excluded under Section 1 – Exclusions;
>         * * *
>     c. Caused by:
>         * * *
>       (6) Any of the following:
>         (a) Wear and tear, marring, deterioration;

---

[1] The relevant factual allegations are taken from Defendants' Local Rule 56(a)(1) Statement ("Def.'s SMF"), ECF No. 32, and attached exhibits, ECF Nos. 32-1–10, and the Zamichieis' Local Rule 56(a)(2) Statement ("Pls.' SMF"), ECF No. 37-1, and the attached exhibit, ECF No. 37-1 at 17. *See* D. Conn. L. Civ. R. 56.

The Court notes that in the Zamichiei's Statement, they qualified their admission throughout—*e.g.*, with phrases such as "[a]dmitted that statement was made." The Zamichieis Statement is improper. *See* D. Conn. L. Civ. R. 56(a)(2) (requiring that the party opposing summary judgment "admit[] or deny[] the facts and/or object[] to the fact as permitted by Federal Rule of Civil Procedure 56(c)"); Fed. R. Civ. P. 56(c) (permitting objections when "material cited to support or dispute a fact cannot be presented in a form that would be admissible evidence"). "The caveats placed on their admissions frustrate Rule 56(a)'s purpose of clarifying whether a genuine dispute of material fact exists." *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, 3:16-cv-510 (JCH), slip op. at 2, n.2 (D. Conn. Dec. 15, 2017).

The Court therefore deems admitted all qualified admissions for purposes of resolving this motion. *See* D. Conn. L. Civ. R. 56(a)(3) ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1 . . . ."). Accordingly, all factual allegations are undisputed.

2

>  >  (b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes to damage or destroy itself;
>  >
>  >  * * *
>  >
>  >  (f) Settling, shrinking, bulging or expansion, including resultant cracking, of . . . foundations, [and] walls . . . .

*Id.* ¶ 7.

> SECTION I – EXCLUSIONS
> I. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
> * * *
> 3. "Water" Damage
>    "Water" Damage means:
>    a. Flood or surface "water" from rain or snow, waves, tidal "water", or spray from any of these, whether or not driven by wind;
>    b. "Water" or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or
>    c. "Water" or water-born material below the surface of the ground, including "water" which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure, caused by or resulting from human or animal forces or any act of nature.
> * * *
> II. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.
>    A. Weather Conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce this loss.
>    B. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.
>    C. Faulty, inadequate or defective;
>       a. Planning, zoning, development, surveying, siting;

  b. Design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;
  c. Materials used in repair, construction, renovation or remodeling; or
  d. Maintenance;

*Id.* ¶ 8.

 E. Additional Coverages
  8. Collapse
     * * *
  a. With respect to this Additional Coverage:
   (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or any part of the building cannot be occupied for its current purpose.
   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.
   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.
   (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.
  b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:
   (1) The Perils Insured Against;
   (2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;
     * * *
   (6) Use of defective material or methods in construction, remodeling or renovation.
  c. Loss to a[] . . . foundation . . . is not included under c.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

*Id.* ¶ 9.

4

##### 2. The Property

The Zamichieis built the Property in 1989, moved into it in January 1990, and have lived there continuously since it was completed. *Id.* ¶¶ 11–12. Three-to-four years ago, Mr. Zamichiei observed a horizontal crack in the basement adjacent to the hatchway door of the external stairs. *Id.* ¶ 14.

On September 16, 2015, William Neal, P.E., a consulting engineer, inspected the Property. Pls.' SMF ¶ 53. He attributed the "spider-web cracks" to Alkali Silica Reaction ("ASR") and recommended replacement of the concrete. *Id.*, Neal Letter., Ex. AA, ECF No. 37-1 at 17. Mr. Neal testified that putting "poor aggregate" into the concrete when it was mixed was a "singular event" that "caused" the cracking. Neal Dep. at 38:22–24, Def.'s SMF, Ex. I, ECF No. 32-9. He also testified that, if he had issued a report at the time of his deposition, he would haved indicated that "most likely cause of the foundation distress" is a chemical reaction involving iron pyrrhotite in the concrete. *Id.* at 51:3–11. He further testified that defective material manifested in the spider-web cracking. *Id.* at 48:12–18. According to Mr. Neal, the concrete was "doomed" from the day it was poured, and impairment of it was "inevitable" based on the use of defective materials. *Id.* at 48:16–49:1.

At the time of Mr. Neal's inspection, the Property's foundation did not require immediate replacement and was not structurally dangerous. Def.'s SMF ¶¶ 29–30. Mr. Neal stated instead that "[t]he ASR will continue to deteriorate the concrete and the basement walls will bulge inward until they structurally fail." Neal Letter at 17. The Zamichieis are using the Property for its intended purpose, namely to live in it. Def.'s SMF ¶ 32. The Property has neither caved in, fallen down, nor is it in imminent danger of falling down or caving in. *Id.* ¶¶ 36–37.

On October 16, 2015, the Zamichieis filed a claim with CSAA for damages to the Property's foundation caused by a chemical reaction. *Id.* ¶ 47. The Zamichieis sought coverage under the Policy's Collapse provision. *Id.* ¶ 48. On November 5, 2015, CSAA denied coverage of the Zamichieis' claim. *Id.* ¶ 50.

### B. PROCEDURAL HISTORY

The Zamichieis filed this lawsuit on April 14, 2016, and CSAA removed the case here on May 17, 2016. ECF No. 1. The Zamichieis amended their complaint to include a single count: breach of contract. Am. Compl., ECF No. 23.

CSAA now moves for summary judgment on multiple grounds. First, CSAA argues that the Zamichieis' claim is barred by the Policy's two-year lawsuit limitation provision. Def.'s Mot. for Summ. J. at 1, ECF. No. 30. Second, coverage for the Zamichieis' loss is barred because the alleged loss occurred outside the policy period. *Id.* Third, the Policy does not provide coverage for the Zamichieis' loss because the loss does not constitute a "collapse" under the policy. *Id.* Fourth, the Policy does not provide coverage for the Zamichieis' loss because it covers "fortuitous" losses only. *Id.* Finally, the unambiguous exclusions in the Policy bar recovery for the Zamichieis' loss. *Id.*

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere

6

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48 (emphasis in original).

Any inferences drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). An inference of a genuine dispute of material fact will not be drawn from conclusory allegations or denials, *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and summary judgment will be granted only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

This case, like a number of other recent decisions in the District of Connecticut, requires the Court to examine the provisions of an insurance policy, after homeowners have discovered that the concrete supporting the walls of their house is deteriorating. *See, e.g., Cyr v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-85 (DJS), slip op. (D. Conn. Jan. 29, 2018); *Makufka v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-00567 (VLB), 2018 WL 465775 (D. Conn. Jan. 18, 2018); *Gabriel v. Liberty Mut. Fire Ins. Co.*, No. 3:14-cv-01435-VAB, 2017 WL 6731713 (D. Conn. Dec. 29, 2017); *Allstate Ins. Co. v. Swaminathan*, No. 3:16-cv-1708 (VAB), 2017 WL 6614092 (D. Conn. Dec. 27, 2017); *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-510 (JCH), 2017 WL 6459552, (D. Conn. Dec. 15, 2017); *Lees v. Allstate Ins. Co.*, No. 3:15-cv-1050 (VAB), 2017 WL 5906613 (D. Conn. Nov. 30, 2017); *Manseau v. Allstate Ins. Co.*, No. 3:16-cv-1231 (MPS), 2017 WL 3821791 (D. Conn. Aug. 31, 2017); *Adams v. Allstate Ins. Co.*, No. 3:16-cv-1360, 2017 WL 3763837 (JBA) (D. Conn. Aug. 29, 2017); *Clough v. Allstate Ins. Co. et al.*, No. 3:17-cv-140 (JBA) (D. Conn. Aug. 29, 2017); *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-

7

1686 (SRU), 2017 WL 3710786 (D. Conn. Aug. 28, 2017); *Valls v. Allstate Ins. Co.*, No. 3:16-cv-1310 (VAB), 2017 WL 4286301 (D. Conn. Sept. 27, 2017); *Metsack v. Liberty Mut. Fire Ins. Co.*, 3:14-cv-1150 (VLB), 2017 WL 706599 (D. Conn. Feb. 21, 2017).

The issue here is whether progressive deterioration caused by a chemical reaction and resulting in cracking concrete falls within a provision of Plaintiffs' homeowner's insurance policy covering collapses. Amend. Compl. ¶ 11. Because the Zamichieis' policy covers only "an abrupt falling down or caving in of a building," Def.'s SMF, Ex. D-1, ECF No. 32-4 at 21, and not the gradual deterioration of property over time, the Court finds that CSAA's policy excludes coverage for the damage to the Zamichieis' basement, and grants CSAA's motion for summary judgment.

Under Connecticut law, "the terms of an insurance policy are to be construed according to the general rules of contract construction"; that is, the Court must discern the intent of the parties as articulated in the provisions of the policy. *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 967 A.2d 1, 21 (Conn. 2009).

The Court reads the words of the policy with "their natural and ordinary meaning," and resolves any ambiguity in favor of the insured. *Wentland v. Am. Equity Ins. Co.*, 840 A.2d 1158, 1163 (Conn. 2004). The Court must construe the contract language in favor of the insured unless there is "'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Liberty Mut. Ins. Co.*, 967 A.2d at 22 (quoting *Kelly v. Figueiredo*, 610 A.2d 1296, 1299 (Conn. 1992)).

"[T]he insured bears the burden of showing that an insurance coverage covers the loss, but the insurer bears the burden of showing that an exclusion applies to exempt it from covering a claim." *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011). The Court resolves any

doubts in favor of the insured. *Id.* Whether a contract is unambiguous is a question of law for the Court, appropriately decided at the summary judgment stage. *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010). If the Court finds that the contract is unambiguous, "the plain meaning of its terms control." *MBIA Inc.*, 652 F.3d at 158.

### A. POLICY COVERAGE FOR COLLAPSE

CSAA argues that the Policy does not cover the Zamichieis' alleged loss because the loss does not constitute a "Collapse" under the Policy. Def.'s Br. at 31, ECF No. 31. Specifically, CSAA argues that "because the [Property] is still standing, has not sustained an abrupt falling down or caving in and is still being used for its intended purpose, the [Property] has not 'collapsed' as contractually defined." *Id.* CSAA also argues that the Policy unambiguously does not cover losses caused by a chemical reaction because the technical source of the cracking is irrelevant when the Zamichieis' loss consists of the foundation settling, shrinking, bulging or expanding. Def.'s Reply Bf. at 9–10, ECF No. 38.

The Zamichieis respond that the walls in their basement are "essentially caving in and, as such, the damages and losses should be covered under the [] [P]olicy." Pls.' Opp. Br. at 6. They also contend that the Policy does not exclude chemical reactions and that the Policy language "risk of direct physical loss" "expand[s]" what is considered "direct physical loss to property" under the Policy. Pls.' Opp. Br., ECF No. 37 at 8–9. They argue that "[t]he cracking, deterioration, and even the purported 'defective materials' are simply the result of the chemical reaction that is going on in the concrete." *Id.* at 9. The Zamichieis therefore argue that, "[t]he conditions purported barring recovery are [s]imply manifestations of a physical loss that is occurring." *Id.*

9

Under Connecticut law, the substantial impairment of a wall's structural integrity is sometimes considered a collapse. *See Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246, 252 (1987) ("[T]he term 'collapse' is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building."); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 163 (D. Conn. 2014) (finding that collapse provision applied where the plaintiffs had "alleged that the cracks in the basement walls are a substantial impairment to [the] walls' structural integrity"). In *Beach*, the Connecticut Supreme Court considered whether a policy that excluded coverage for damage unless the "collapse of a building . . . not otherwise excluded ensues." *Beach*, 205 Conn. at 250. The court observed that the policy, which contained no terms to qualify "collapse," did not "unambiguously limit its liability to a 'collapse' of a sudden and catastrophic nature." *Id.* at 251-52 ("If the defendant wished to rely on a single facial meaning of the term 'collapse' as used in its policy, it had the opportunity expressly to define the term to provide for the limited usage it now claims to have intended."). *Id.* The term "collapse," therefore, was, in that policy, "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." *Id.* at 252.

Here, the contract's language, unlike the language in *Beach*, includes the phrase "abrupt," and not the word "ensue." This case turns on whether "abrupt," attached to "falling down or caving in," "expressly . . . define[s] the term to provide for the limited usage." *See Beach*, 205 Conn. at 250. The Zamichieis acknowledge that the chemical reaction that resulted in the impairment of the concrete was "inevitable," and suggested that the concrete was "doomed" from the day it was poured, Neal Dep. at 48:16–49:1, but argue that the definition of "collapse" is merely a definition of terms, whereas the remaining provisions clarify instances when collapse has not occurred. Pls.' Br. at 6. The Zamichieis therefore argue that the term "collapse" is

10

ambiguous in light of the qualifying language in the policy, *e.g.*, the Policy covers hidden decay, which the Zamichieis argue is a gradual process. *Id.* at 7. The Court disagrees.

The Connecticut Supreme Court held in an environmental contamination case that modifiers such as "sudden and accidental" in a pollution context signal "a temporal quality, which requires that the onset of the release in question occurs quickly or happens abruptly." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 791 A.2d 489, 496 (Conn. 2002).

Courts in this District have applied *Buell*'s reasoning in the cracking concrete context. In *Metsack*, for example, the court considered whether an insurance policy that covered "sudden and accidental direct physical loss," covered cracking concrete. 2017 WL 706599, at *3. The court explained that, "[w]hile *Beach* and the numerous JJ Mottes concrete cases that have been heard in this district have held that a collapse need not be 'sudden' to be covered, none of the policies evaluated included the word 'sudden' within their 'collapse' provisions." *Id.* at *7 (declining to follow conclusion in *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262, 1268 (M.D. Fla. 2012, that "the inclusion of [the term] 'sudden' in the definition of LOSS for a policy that covers insect damage creates an ambiguous policy provision"). *Id.* The Court noted that the parties had both acknowledged that the basement walls deteriorated over many years, and concluded that the limiting term "sudden" unambiguously excluded coverage for long-term deterioration of concrete. *Id.* at *8.

Other decisions in this District considering similar language have found that when an insurer added "sudden and accidental"—temporal, limiting language—to the term "collapse," the phrase was unambiguous. *See Adams v. Allstate Ins. Co.*, No. 3:16-cv-1360, 2017 WL 3763837, slip op. at 5 (JBA) (D. Conn. Aug. 29, 2017) (granting Allstate's motion to dismiss claims for coverage of cracking concrete damages, which plaintiff admitted was a progressive deterioration

11

over time, under policy that covered "sudden and accidental direct physical loss to property"); *Valls*, No. 3:16-cv-1310 (VAB) (D. Conn. Sept. 27, 2017) (granting Allstate's motion to dismiss because, under collapse provision that provided coverage for accidental and sudden collapse, the plaintiffs alleged "progressive deterioration" and not suddenness); *Manseau v. Allstate Ins. Co.*, No. 3:16-cv-1231 (MPS), 2017 WL 3821791, at *5 (D. Conn. Aug. 31, 2017) ("[T]he term 'sudden,' used in the context of the phrase 'sudden and accidental' is unambiguous, and must be accorded a temporal quality."); *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-1686 (SRU), 2017 WL 3710786, at *4 (D. Conn. Aug. 28, 2017) (noting policy contained "a number of qualifiers, . . . which operate to reduce the scope of coverage" and finding that plaintiffs had not shown that their basement walls had undergone an "entire collapse"); *Clough v. Allstate Ins. Co. et al.*, No. 3:17-cv-140 (JBA) (D. Conn. Aug. 29, 2017) (finding that the plaintiffs had alleged "progressive deterioration that may in the future be punctuated with sudden breaks or collapses," but that "[w]ithout any allegation of suddenness, and with allegations that explicitly contradict the possibility that any sudden loss has already occurred, Plaintiff's claim is not plausibly covered by the plain language of the policy unless it falls under the limited exception for certain kinds of collapses"); *Metsack v. Liberty Mut. Fire Ins. Co.*, 2017 WL 706599 (D. Conn. 2017) (finding sudden collapse unambiguous); *Lajeunesse v. Allstate Ins. Co.*, 3:16-cv-937 (AVC) (D. Conn. Aug. 31, 2017) ("By any reasonable interpretation, a contract provision requiring a 'sudden' collapse in order to trigger coverage, would not include a barely perceivable chemical reaction that slowly reduces the structural integrity of concrete over a period of years."); *Carlson v. Allstate Ins. Co.*, 3:15-cv-1045 (MPS) (D. Conn. Sept. 27, 2017) ("Because the term 'sudden,' as used in the collapse coverage provision, means temporally abrupt, the Carlsons must point to evidence that the loss for which they seek coverage occurred abruptly,

and not merely unexpectedly, for it to be a covered collapse."); *Carney v. Allstate Ins. Co.*, 3:16-cv-592 (VLB) (D. Conn. Feb. 14, 2017) (finding no bad faith when Allstate denied coverage for cracking concrete where the "impairment to the property is caused by a gradual chemical reaction and the property retains its structural integrity").

The Policy at issue requires "an abrupt falling down or caving in," and this Court sees no reason to depart from the analyses in these cases, finding that a sudden loss must occur abruptly, not gradually over time. Other decisions in this District also have rejected arguments that insurance policies requiring abrupt collapse are ambiguous. *See, e.g.*, *Liston-Smith*, slip op. at 8 (finding that a CSAA policy requiring "an abrupt falling down or caving in" did not cover plaintiffs' home because "the walls were deteriorating as a result of a progressive condition, remained upright, and the home was still inhabitable for its intended purpose"); *id.* at 8–9 (collecting cases); *England v. Amica Mut. Ins. Co.*, No. 3:16-CV-1951 (MPS), 2017 WL 3996394, at *5 (D. Conn. Sept. 11, 2017) (finding no ambiguity in the meaning of "abrupt collapse" where such a collapse was defined as an "abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose"); *Alexander v. General Ins. Co. of Am.*, No. 3:16-cv-59 (SRU), transcript of oral ruling, ECF No. 22 at 23 (D. Conn. July 7, 2016) (granting motion to dismiss where policy at issue defined collapse as an "abrupt falling down or caving in" and the building at issue was "in danger of falling down").

The term "abrupt" therefore is unambiguous and must be "accorded its natural and ordinary meaning." *Connecticut Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (2008). "To ascertain the commonly approved usage of a word in an insurance policy, it is appropriate to look to the dictionary definition of the term." *Lexington Ins. Co. v. Lexington Healthcare Grp.*,

*Inc.*, 311 Conn. 29, 42 n.8 (2014) (internal citation and alteration omitted). "The ordinary meaning of the word 'abrupt' is 'characterized by or involving action or change without preparation or warning.'" *England v. Amica Mut. Ins. Co.*, No. 3:16-CV-1951 (MPS), 2017 WL 3996394, at *5 (D. Conn. Sept. 11, 2017) (quoting *Merriam Webster's Collegiate Dictionary* (10th ed. 1994)).

The insurance policy at issue here unambiguously covers only "abrupt" collapse, and the Zamichieis have not shown that their home has collapsed within the meaning of the Policy. The Zamichieis' expert stated that, at the time of inspection, the Property's foundation did not require immediate replacement and was not structurally dangerous. Def.'s SMF ¶¶ 29–30. Furthermore, the Zamichieis continue to use the Property for its intended purpose, *id.* ¶ 32, and it has neither caved in nor fallen down, and it is not in imminent danger of falling down or caving in. *Id.* ¶¶ 36–37. The Court therefore concludes that CSAA did not breach its contract with the Zamichieis by denying coverage for the cracked concrete in their basement walls.

The Zamichieis cite to *Dalton v. Harleysville Worcester Mut. Ins. Co.* to support their argument that the term collapse is ambiguous in light of qualifying language in other provisions in the policy. 557 F.3d 89, 93 (2d Cir. 2009). Their reliance on *Dalton* is misplaced. In *Dalton*, the court held that "[t]he policy language, read as a whole, does not resolve the question of whether 'total or near total destruction' is required." *Id*. Unlike here, however, the policy at issue in *Dalton* did not require a collapse to be "abrupt." *See id.* ("The policy at issue expressly provides coverage for collapse caused by 'hidden decay' and 'hidden insect or vermin damage.'"); *see also Beach*, 532 A.2d at 1300 (finding that "[b]y its reference to a 'collapse' that 'ensues,' the policy in this case can reasonably be understood to have contemplated coverage for a 'collapse' that follows consequentially from excluded activity" and therefore "the defendant's

policy does not unambiguously limit its liability to a 'collapse' of a sudden and catastrophic nature"). Here, too, the Policy qualifies coverage of hidden decay by adding: "unless the presence of such decay is known to an 'insured' prior to collapse." Def.'s SMF ¶ 9. Put another way, if the presence of the decay is known to the insured at the time of collapse, the collapse cannot reasonably be understood to be abrupt. Here, the Policy's collapse provision is unambiguous, and the *Dalton* decision is inapplicable.

The Zamichieis also cite to *130 Slade Condominium Association, Inc. v. Millers Capital Ins. Co.*, No. CIV.A. CCB-07-1779, 2008 WL 2331048, (D. Md. June 2, 2008). But the court's conclusion in *Slade Condo. Association, Inc.*, did not turn on whether the policy language was ambiguous. Instead, the plaintiffs were entitled to coverage after a column buckled approximately three inches down and three inches over, the ceiling of the master bedroom separated from the wall, and the building was evacuated for several days until [the] columns were stabilized. 2008 WL 2331048, at *1. *Slade Condo. Association, Inc.* did not concern facts analogous to those at issue here.

The Zamichieis therefore have raised no genuine dispute of material fact as to whether the Policy covers their loss under the Additional Coverage.

### B. POLICY COVERAGE FOR A CHEMICAL REACTION

Alternatively, the Zamichieis argue that a chemical reaction constitutes a "risk of direct physical loss to property" under the Policy and therefore would be a covered loss. CSAA responds that the Zamichieis "cannot plausibly allege that the 'loss' was the chemical reaction itself while at the same time alleging that the 'loss' consists of 'damages caused by a chemical reaction.'" Def.'s Reply Br. at 8 (quoting *England*, 2017 WL 3996394, at *6). The Court, however, notes that under Federal Rule of Civil Procedure 8, a party may plead alternative and

15

inconsistent legal theories. *See* Fed. R. Civ. P. 8(d)(2)–(3); *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49, 62 (2d Cir. 2004) (citing Fed. R. Civ. P. 8(d)(2) in rejecting the defendants argument that the plaintiffs' claim regarding overcharge was waived because it was inconsistent with the mark-up theory they advanced in the court below).

In essence, the Zamichieis argue that, independent from how it manifests itself, the chemical reaction is a "risk of direct physical loss to the property." "This is not a plausible reading because the terms 'direct physical loss' and 'loss,' as used in the Polic[y], unambiguously require some change to the detriment of the insured, and a chemical reaction— without any physical manifestations—does not fit that bill." *England*, 2017 WL 3996394, at *6. The Policy excludes "risk of direct physical loss . . . [c]aused by . . . settling, shrinking, bulging or expansion, including resultant cracking, of . . . foundations [and] walls." Def.'s SMF ¶ 7. "In other words, the 'loss' is the damage or the detrimental change to the insured that is the product of these excluded processes and events. A 'loss' then can be the result of an originating chemical reaction but it cannot be the originating chemical reaction itself absent any physical manifestation." *Id.* at 7; *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-CV-01686 (SRU), 2017 WL 3710786, at *3 (D. Conn. Aug. 28, 2017) (finding that the "loss—if not considered an imminent collapse—clearly 'consist[s] of . . . settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls.' The technical cause of the cracking or bulging is irrelevant." (internal citations omitted)).

"Risk" paired with "direct physical loss to the property" does not change the outcome. Even if the Court were to read "risk" as broadening the scope of coverage under Policy, the Policy nonetheless excludes coverage for "risk of direct physical loss" caused by "bulging . . . , including resultant cracking, of . . . foundations [and] walls." Def.'s SMF ¶ 7. The risk to the

16

Property is that "basement walls will bulge inward until they structurally fail." Neal Letter at 17; *see also Liston-Smith*, slip op. at 12 (finding, under terms substantially similar to those at issue here, no genuine issue of material fact where the "risk of damage to the plaintiff's home is posed by bulging in the concrete and resulting cracking"); *Manseau*, 2017 WL 3821791, at *4 ("The cracking Plaintiffs allege to have occurred falls squarely within the Policy language in the definition of 'collapse' excluding coverage for 'settling, cracking, shrinking, bulging or expansion.'"); *Agosti*, 2017 WL 3710786, at *3 (finding that plaintiffs' loss was excluded even though the "insurance policy does not exclude by name losses that are caused by chemical reactions," but "expressly exclude[d] 'loss consisting of or caused by . . . settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls'"). Importantly, the Policy also excludes coverage for "latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself," Def.'s SMF ¶ 7, and "[f]aulty . . . [m]aterials used in . . . construction," *id.* ¶ 8. Here, the cracking concrete at issue was faulty at the time it was used in the construction of the Property. Neal Dep. at 48:12–18.

These exclusions distinguish the Policy and condition of the Property from the facts in *401 Fourth Street, Inc. v. Investors Insurance Group*, where the court determined that a policy with "risks of direct physical loss" language "clearly broaden[ed] the policy's coverage to include something less than a structure completely falling to the ground." 823 A.2d 177, 179 (Pa. Super. Ct. 2003), *aff'd*, 879 A.2d 166 (Pa. 2005). Unlike in *401 Fourth Street, Inc.*, here, the several exclusions follow the "risk of loss" language. *401 Fourth Street, Inc.*, therefore is inapposite to this case.

The Zamichieis therefore have not raised a genuine issue of material fact as to whether the Policy covers chemical reactions.

## C. POLICY COVERAGE FOR REASONABLE REPAIRS

The Zamichieis also argue that the cost to them for replacing the foundation should be covered under the "Additional Coverage" for reasonable repairs. Pls.' Opp. Br. at 10. CSAA responds that the Policy's "Additional Coverage" for "Reasonable Repairs" only applies where "covered property" is damaged by a "Peril Insured Against." Def.'s Reply Br. at 6. The Court agrees.

The policy's Additional Coverage provision states: "We will pay the reasonable cost incurred by you for the necessary measure taken solely to protect covered property that is damaged by a Peril Insured Against from further damage." Pls.' SMF ¶ 52. The provision covers losses resulting from collapse. The provision, however states that a part of a building that is standing is not considered to be in a state of collapse within the meaning of the policy even if "it has separated from the building" or "shows evidence of cracking [or] bulging." Def.'s SMF ¶ 9. Moreover, the provision expressly excludes loss to a foundation unless such loss is a "direct result of the collapse." *Id.* The Zamichieis have presented no evidence that their home or any part of their home has collapsed within the meaning of the provision; rather, they continue to live at the property. The specific exclusions under the Additional Coverage provision therefore pre-empt coverage for the loss suffered by the Zamichieis.

The Property has not been "damaged by a Peril Insured Against," and thus the Additional Coverage cannot be reasonably read to include the loss at issue here. *See* Def.'s SMF ¶¶ 7, 9; *see also Liston-Smith*, slip op. at 13 ("Because the 'risk' plaintiffs identify is not covered under the Policy, the Additional Coverage for reasonable repairs does not apply.").

The Zamichieis therefore have not raised a genuine issue of material fact as to whether the Policy's "reasonable repairs" provision would cover their loss.

18

### D. POLICY COVERAGE FOR ENSUING LOSS

Finally, the Zamichieis argue that they can recover under the Policy's "ensuring loss" provision. Pls.' Opp. Br. at 10. This provision, however, expressly provides that: "We do not insure for loss to property described in Coverages A and B caused by any of the following." Def.'s SMF ¶ 8. Under a subsection, the Policy excludes "[f]aulty, inadequate or defective . . . [m]aterials used in . . . construction." *Id.* As discussed above, the cracking concrete at issue here was faulty at the time it was used in the construction of the Property. Neal Dep. at 48:12–18. The Zamichieis thus have not raised a genuine issue of any material fact as to whether the Policy's "ensuring loss" provision covers the cracking concrete at issue here.

The Zamichieis therefore have not raised a genuine issue of material fact as to whether the Policy's "ensuring loss" provision would cover their loss.

Because the Court finds that the Zamichieis' claim is not covered under the collapse provision and is precluded by exclusions in the Policy, the Court need not, and does not, address the issue of timeliness or whether the policy is an "all-risk" policy.

## IV. CONCLUSION

CSAA therefore is entitled to summary judgment as a matter of law. *See Cont'l Ins. Co.*, 603 F.3d at 180 (summary judgment is appropriate when a contract's terms are unambiguous).

For the reasons discussed above, the motion for summary judgment is **GRANTED**.

The Clerk of the Court is instructed to enter judgment for Defendant and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of February, 2018.

                                                  /s/ Victor A. Bolden
                                                  VICTOR A. BOLDEN
                                                  UNITED STATES DISTRICT JUDGE